RJR Para Corp. *vs.* Metcalf F. Pond & others.[1]

No. 09-P-1569.

Suffolk. September 27, 2010. - November 30, 2010.

Present: Rapoza, C.J., Cypher, & Green, JJ.

*Real Property,* Adverse possession, Ownership, Record title. *Assignment.*
*Notice. Due Process of Law,* Notice. *Practice, Civil,* Relief from judgment.

In an action brought in the Land Court by a plaintiff seeking to quiet title to a
certain parcel of land based on a claim of adverse possession, the judge
erred in denying a motion to intervene brought by a third party (who
claimed an interest by means of assignment from the widow of the grandson
of the holder of record title) seeking relief from a default judgment, where
the plaintiff's efforts to uncover living heirs of the holder of record title
were inadequate, and where the widow's assignment to the third party of
her rights in the present action carried with it the right to assert her claim
of a violation of due process rights arising from the plaintiff's inadequate
notice. [364-366]

CIVIL ACTION commenced in the Land Court Department on
March 21, 2006.

The case was heard by *Keith C. Long*, J., and a motion to
intervene was heard by him.

*Robert M. Mendillo* for Edward W. Gately.

*Deborah E. Batog* for the plaintiff.

GREEN, J. The plaintiff brought an action in the Land Court
seeking to quiet title to a certain parcel of land in Medway and
Milford, based on a claim of adverse possession. Record title to
the parcel was in one Metcalf F. Pond by virtue of an 1888
deed of the parcel to him.[2] The plaintiff sought and obtained an
order of the court approving notice by publication and, when

---

[1] Heirs and/or legal representatives of Metcalf F. Pond, and Edward W.
Gately as putative intervener.

[2] From the record we learn that Pond was born in Medway on December 30,
1849.

no one answered, obtained a judgment by default. Shortly after the entry of judgment, however, two parties sought to intervene for the purpose of seeking relief from the judgment, both claiming an interest in the property, and further claiming that notice by publication was inadequate to satisfy their rights to due process. A judge of the Land Court allowed the motion of Janet P. Dinan, who claimed an interest as Pond's granddaughter. However, the judge denied the motion of Edward W. Gately, who claimed an interest by means of assignment from Viola Payson (the widow of Pond's grandson, James Payson). Gately appealed, and we reverse.

*Background.* The plaintiff in the present case sought approval to give notice of this action by publication, based on the likelihood that the record owner of the parcel was deceased, and based on "diligent efforts" to locate other persons who might have an interest. Those efforts began with examination of a letter submitted in 1967 in Land Court Registration Case No. 32712,[3] in which attorney Jeffrey S. Grad explained that he had been unable to locate any probate of Pond's estate, or any certificate of his death in the division of vital statistics at the State House. The plaintiff's attorney in the present case examined additional records in her search for information concerning Pond, and discovered that he had married the former Jessie F. Holbrook in Medway on September 18, 1882. However, the plaintiff's attorney either did not pursue or did not discover any further information concerning possible heirs resulting from the marriage of Metcalf and Jessie Pond.

By contrast, Edward W. Gately discovered that Metcalf and Jessie Pond had a daughter, Carabel, born on April 29, 1892; that on April 1, 1916, at age 23, "Carribelle" Pond married one James Payson; and that Carribelle and James had a son, James, born on November 14, 1918, and a daughter, Janet, born on November 13, 1919. Gately further located Viola Payson (Payson), the widow of James Payson, Jr., and Robert Dinan (Robert), the son and legal guardian of Janet Payson Dinan (Dinan). After conversations with the families of both, Robert determined to seek to intervene in the action to assert his mother's interest,

---

[3]The earlier registration proceeding involved a different parcel in which Pond held a record interest.

while Payson agreed to convey her interest in the parcel to Gately for $1,000. Payson conveyed her interest to Gately by means of two instruments, the first being a deed dated August 23, 2006, and recorded with the Worcester County registry of deeds at book 39636, page 326, and the second being an assignment, dated November 27, 2006, to Gately of "the right to raise and assert, on my behalf and/or on his behalf, all of the rights, interests and privileges that I had or have, as an heir of Metcalf F. Pond, (A) as a party/defendant in the Massachusetts Land Court case of RJR Para Corp. v. Metcalf F. Pond, et al, Miscellaneous Case No. 320748, and (B) as the grantor of [the above-described deed]."

In the meantime, however, default judgment had entered in the Land Court case on July 18, 2006. On August 25, 2006, Gately moved to intervene in the action for the purpose of seeking relief from the default judgment, claiming an interest under the August 23, 2006, deed from Payson.[4] After a hearing on November 7, 2006, the matter was put over for a subsequent hearing on the question of Gately's standing. Dinan (by her son and legal guardian, Robert) filed her motion to intervene on November 10, 2006, and, as previously recounted, Gately acquired a further assignment of rights from Payson on November 27, 2006. After a hearing on December 19, 2006, the judge issued a memorandum of decision in which he concluded that the efforts to locate Pond's heirs had been inadequate to protect the due process rights of the heirs discovered by means of Gately's search, but that Gately lacked standing to assert an interest in the property as a basis to intervene in the action seeking post-judgment relief. The judge allowed Dinan to intervene.[5]

*Discussion.* We agree with the conclusion of the judge that the plaintiff's efforts to uncover Pond's living heirs were inadequate; upon the discovery of Pond's marriage to Jessie it was natural to examine public records to ascertain whether any children resulted from the marriage, and indeed Gately was able

---

[4]Gately acknowledges that, at the time of the August 23, 2006, deed from Payson, he was aware that a default judgment had entered in the case.

[5]The plaintiff advises that Dinan subsequently died, and that it thereafter reached a settlement agreement with her heirs pursuant to which (among other terms) the heirs agreed to dismiss their respective claims to the property.

to do so with little apparent difficulty. From that conclusion it flows that Dinan and Payson held potential interests as heirs to Pond, and were entitled to intervene for the purpose of asserting claims that their interests had been foreclosed without due process by reason of inadequate notice to them. The separate question is whether Payson's interest in such a claim validly passed to Gately, either by deed or assignment (or by combination of the two). The judge concluded that the deed could not convey any interest in the property, since at the time Payson executed and delivered it her interest in the property had already been foreclosed by the default judgment, and Gately was aware of the judgment before he took delivery of the deed. Cf. *Barnes* v. *Springfield,* 268 Mass. 497, 505-506 (1929) (in eminent domain proceeding "[t]he rights of the parties are determined by the state of the title at the time of the taking; and a deed of property delivered after the taking does not operate as an assignment of the claim for damages"). Compare *Devine* v. *Nantucket,* 449 Mass. 499, 511-512 (2007) (grantee of property who accepted deed without actual or constructive notice of prior taking by the town acquires free of town's claim). We need not resolve the question, however, because we conclude that Payson's assignment to Gately of her rights as a party in the present action carried with it the right to assert her claim of a violation of due process rights.

In concluding that Gately lacked standing to intervene in the action, the judge observed that "[o]rdinarily one may not claim standing . . . to vindicate the constitutional rights of some third party," citing (and quoting from) *Blixt* v. *Blixt,* 437 Mass. 649, 661 (2002). In response to Gately's contention that Payson's assignment of rights conveyed an interest sufficient to support his standing, the judge reasoned that Gately sought to assert a constitutional due process claim, that such a claim is personal in nature, and that, quoting from *General Exchange Ins. Corp.* v. *Driscoll,* 315 Mass. 360, 363 (1944), "[a] claim for personal injury cannot be assigned."

However, though the claimed violation of due process is personal in nature in that it implicates personal rights, it is not a claim for personal injury. The historic common-law prohibition against assignment of claims for personal injury is rooted in

concerns for the presentation of evidence of damage, and the risk that "it would enable the rich and powerful to oppress the poor." *Rice* v. *Stone*, 1 Allen 566, 569-570 (1861). No such prohibition applies, however, to assignment of a claim for injury or damage to a property interest. See *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 640 (1983). In essence, the due process claim at issue in the present case is a claim for injury to an interest in property, since it seeks relief from a judgment allegedly depriving the claimant of property without due process.

Nor is it of any particular concern that Gately acquired Payson's interest for a relatively low consideration; there is no indication that the transaction was anything other than one at arm's length, and indeed, Dinan elected to retain her interest in order to prosecute it directly. Cf. *Saladini* v. *Righellis*, 426 Mass. 231, 237 (1997).

In short, there appears to be no dispute in the present case that Payson could have intervened in her own right, and we discern no reason why, as assignee of Payson's rights in the matter, Gately may not stand in her shoes.[6] The order denying Gately's motion to intervene is reversed, and the matter is remanded for further proceedings.

*So ordered.*

---

[6]Though persons such as Gately, who discover and pursue long-dormant property interests held by heirs of the record owner, have occasionally been the subject of adverse commentary in our cases, see, e.g., *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 459 (1984) (describing another such individual as a "bounty hunter in troubled titles"), any vestigial notion that the pursuit of such claims is somehow illegitimate appears to have been resolved by *Saladini* v. *Righellis, supra* at 234-235 (1997) (abandoning prohibition against champerty). Gately's effort does not in any event implicate champerty, as he seeks merely to prosecute his own interest, acquired by means of assignment. See *Christian* v. *Mooney*, 400 Mass. 753, 758 & n.7 (1987).