295 P.2d 700

DUNCLICK, Inc., a corporation, Plaintiff-Respondent,

v.

UTAH–IDAHO CONCRETE PIPE CO., Inc., a corporation, and Idaho Concrete Pipe Co., Inc., a corporation, Defendants-Appellants.

No. 8303.

Supreme Court of Idaho.

March 28, 1956.

Jeppesen & Jeppesen, Boise, for respondent.

Garrity & Garrity, Nampa, for appellants.

SMITH, Justice.

The Utah-Idaho Concrete Pipe Co., Inc., a Utah corporation, qualified to do business in the State of Idaho July 1, 1946; its authority to do business in this state remained in effect until December 1, 1952. The Idaho Concrete Pipe Co., Inc., is a

going Idaho corporation, in good standing, organized August 3, 1948.

Utah-Idaho Concrete Pipe Co., Inc., at times hereinafter will be designated the Utah company, and Idaho Concrete Pipe Co., Inc., the Idaho company.

Prior to the month of August, 1948, the Utah company owned and operated a concrete products manufacturing plant at Nampa, Idaho. During August, 1948, after organization of the Idaho company, the Utah company transferred its Nampa plant, consisting of its lands and buildings, its concrete pipe making machinery and other equipment, to the Idaho company.

Respondent during January, 1951, purchased from the Utah company certain equipment, and sewer and concrete products, hereinafter called products, to the amount of $5,337.18. The original contract for the sale of the products named the Utah company as the seller and respondent as purchaser. A portion of the products included in the sale were listed on sales slips of the Idaho company. Some of the products purchased were shipped from the Salt Lake City and Ogden places of business of the Utah company, and some, as listed on the Idaho company's sales slips, were shipped from the Nampa, Idaho, place of business of the Idaho company.

Respondent returned certain of the products, as defective, about May 6, 1952, pursuant to an oral agreement whereby, as respondent alleges, both the Utah and Idaho companies accepted the returned products and promised to refund to respondent the sum of $1,335.17 paid originally therefor, less a credit thereon of $420, owed by respondent to the Utah company on the original contract of purchase of the products; this left a balance of $915.17 owing to respondent on the account. Pursuant to said agreement respondent returned the products to the Nampa plant and to the Nampa address given for both the Utah and the Idaho companies. A portion of the products returned to the Nampa plant originally came to respondent from Salt Lake City and Ogden, and some came from Nampa.

Respondent brought this action against both the Utah company and the Idaho company for recovery of said balance of account of $915.17 owing. Respondent alleged that the two companies were doing business in Idaho as a joint venture and that they acted concertedly in such transactions under the name of Utah-Idaho Concrete Pipe Co., Inc. The Idaho company made answer admitting its corporate existence and generally denied all other material allegations of respondent's complaint. The Utah company did not make answer, or otherwise plead.

A jury returned a verdict in favor of respondent, and against appellant Idaho company for $915.17 with interest. The court thereupon entered judgment, joint and several in form, against the two com-

panies in favor of respondent, in said sum of $915.17 with interest and costs.

The notice of appeal shows that both companies perfected appeal from the judgment, whereas, counsel for the Idaho company states that the appeal was taken solely by the Idaho Concrete Pipe Co., Inc.

■ Appellant assigns error of the trial court in "admitting testimony as to any conversation held between the plaintiff corporation and Mr. Charles Ward." The assignment is not well taken because: certain of the testimony was admitted without objection having been made, Goody v. Maryland Casualty Co., 53 Idaho 523, 25 P.2d 1045; certain of the testimony was conditionally admitted, and no motion to strike it, later made, McShane v. Quillin, 47 Idaho 542, 551, 277 P. 554; appellants invited conditional admission of certain of said testimony, Frank v. Frank, 47 Idaho 217, 221, 273 P. 943; the record shows no adverse ruling to form the basis of such assignment and therefore the assignment presents nothing for review, Morton Realty Co. v. Big Bend Irr. & Min. Co., 37 Idaho 311, 316, 218 P. 433; Franklin v. Wooters, 55 Idaho 619, 624, 45 P.2d 804.

Appellant next assigns error of the trial court in denying appellant's *motion for nonsuit*, and assigns insufficiency of the evidence to support the verdict of the jury. Both assignments raise the question of sufficiency of the evidence and will be considered and disposed of together.

Mr. Ward, an officer of the Utah company, i. e., its manager, instructed respondent to return the products to "our Nampa plant," which plant accepted the return of the products and it still had the products at the time of the trial.

Respondent still owed the sum of $420 on the original written contract of purchase, at the time of the return of the products to the plant at Nampa, and that amount of $420 was set off against the amount which became due to respondent for the products returned. This was accomplished by an exchange of checks, each in the amount of $420, between respondent's vice president, Mr. Click, and Mr. Pendrey, manager of the Idaho company at Nampa. The officer, Mr. Pendrey, then gave Mr. Click a typewritten note addressed to Mr. Charles Ward, the general manager of the Utah company, reading as follows:

"Mr. Charles Ward, In checking this invoice in the amount of $1,335.17, it appears that we received everything as shown. By crediting *our* account with the $420.00 payment, it looks like Utah Idaho still owes Dunclick $915.17. How does that check with your figures? Pete Pendrey." (Emphasis supplied.)

At the time of such last transaction Mr. Nysingh, office manager of the Idaho com-

pany wrote a statement or receipt on the letterhead stationery of Utah-Idaho Concrete Pipe Co., Inc., acknowledging receipt of full payment of the original written contract and handed such statement or receipt to Mr. Click. That letterhead so used by Mr. Nysingh sets out, as one of the addresses of the Utah company, the address of the Idaho company, i. e., "Nampa, Idaho, 222 Caldwell Blvd."

A previous statement to respondent, showing the balance of $420 as due on the written contract, is on a statement of Utah-Idaho Concrete Pipe Co., giving its address, "P. O. Box 69, Nampa, Idaho," and giving its Nampa telephone number. The printed Utah address and telephone number on the statement is shown stricken out, and Mr. Nysingh, office manager of the Idaho company, typed in and substituted therefor the Nampa, Idaho, post office box and telephone number of the Idaho company.

Payment of the amount of $915.17, as the balance owing to respondent on account of the returned products, as arrived at about May 6, 1952, in the manner aforesaid, was not forthcoming with promptness; by reason thereof respondent's secretary-treasurer, Mrs. Click, about two weeks after such agreement was arrived at, telephoned from respondent's office in Lewiston, to Mr. Pendrey, at Nampa; also, she called Mr. Pendrey twice later at intervals of some two to three weeks. On each of those occasions she requested the balance owing respondent on the account of the products returned. On the first call, Mr. Pendrey told Mrs. Click she could expect the check within a few days; during the second call he expressed regret at the neglect in not getting the check sent but assured her that "they would have it done in a few days." During the third call he told her that he would check with Mr. Jessen, president of the company, that he was sorry about the delay and would check on it.

During all the times mentioned the Mr. Jessen referred to was and is George R. Jessen who is the president of both the Utah and the Idaho corporations.

The officers of respondent during all the dealings referred to, believed that there was but one corporation and that they were dealing with the Utah-Idaho Concrete Pipe Company, Inc., and that it owned the plant at Nampa, as well as its properties in Utah.

The trial court's instructions to the jury included the basic theories of joint venture, and an instruction as follows:

"You are instructed that before you can find against the Idaho Concrete Pipe Co., Inc., and for the plaintiff Dunclick, Inc., a corporation, you must find by a preponderance of the evidence that the defendants Idaho Concrete Pipe Co., Inc., and Utah-Idaho Concrete Pipe Co., Inc. entered into a joint venture wherein they contracted

with and sold the plaintiff Dunclick, Inc., the concrete products described in plaintiff's complaint."

■ The question of whether or not the two companies engaged in a joint venture in the sale of the materials to respondent and in the transaction of the return of the products by respondent, and the agreement to return the purchase price thereof to respondent, presented a question for the jury's determination.

In Stearns v. Williams, 72 Idaho 276, 240 P.2d 833, 838, this Court ruled:

"Whether a relation of joint adventurers exists is primarily a question of fact for the trial court to determine from the facts and the inferences to be drawn therefrom. [Citations.]

"It is immaterial in whose name the property is acquired in a joint venture, as one holding title is a trustee for those who are so engaged in the joint enterprise. [Citation.]

"To constitute a joint adventure the parties may combine their property, money, efforts, skill or knowledge in some common undertaking, and their contribution in this respect need not be equal or of the same character, but there must be some contribution by each joint adventurer of something promotive of the enterprise. [Citations]; and even though one adven-

turer owns all the property used in the joint adventure, this is not conclusive in determining whether such relationship exists. [Citation.]

"A contract of joint adventure need not be expressed but it may be implied, in whole or in part, from the conduct of the parties [citation]; direct testimony or documents are not essential, [citations]. Again, even though the details of such joint adventure were shown by indefinite and uncertain testimony, this does not preclude finding that such a joint adventure existed from their acts and conduct, and from the testimony and the inferences that might reasonably be drawn therefrom. [Citations.]"

■ Appellant has pointed to inferences which could be drawn from the facts and circumstances shown herein, as well as to evidence if standing alone, both of which would conflict with the theory of existence of a joint venture. This Court is committed to the rule, however, that a conflict not only in the direct evidence but in the inferences, probabilities and conclusions will not justify a reversal of the judgment on appeal, Gem State Sales Co. v. Rudin Bros., Inc., 55 Idaho 299, 41 P.2d 614, 615; Idaho Gold Dredging Corp. v. Boise Payette Lumber Co., 64 Idaho 474, 133 P.2d 1017; Nelson v. Altizer, 65 Idaho 428, 144 P.2d 1009; Bates v. Siebrand Bros. Circus & Carnival, 71 Idaho 318, 231 P.2d 747;

Shepard v. Smith, 74 Idaho 459, 263 P.2d 985. The rule is aptly stated in 3 Am.Jur., Appeal and Error, sec. 887, p. 444, as follows:

"On a challenge to the sufficiency of the evidence to support the verdict, the question presented on appeal is, admitting the truth of all the evidence of the plaintiff, together with such inferences and conclusions as may reasonably be drawn therefrom, and eliminating all evidence of defendant in conflict with plaintiff's evidence, and all opposing inferences, whether there is any competent evidence tending to support the verdict against the defendant."

This Court has frequently and uniformly held that findings made by the trier of facts, supported by substantial, competent, although conflicting evidence, will not be disturbed on appeal. I.C. § 13–219; Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347; Williams v. Idaho Potato Starch Co., 73 Idaho 13, 245 P.2d 1045; Summers v. Martin, 77 Idaho 469, 295 P.2d 265.

We conclude that the evidence is sufficient to sustain the verdict of the jury and the judgment of the trial court.

The judgment is affirmed. Costs to respondent.

TAYLOR, C. J., KEETON and PORTER, JJ., and KOELSCH, District Judge, concur.